IN THE UNITED STATES DISTRICT COURT

FOR SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SDNY PRO SE OFFICE
2022 FEB -1  AM 10: 30

DAVID LOUIS WHITEHEAD,

                PLAINTIFF,

V.                                CASE No. _____

NETFLIX INC,

THE TRAVELERS INDEMNITY  COMPANY INC,

GABRIELLE BAILEY,  The Travelers Companies,

GEICO, ET AL.

                DEFENDANTS.


**PLAINTIFF'S  COMPLAINT** PURSUANT  TO THE FEDERAL RULES OF CIVIL

PROCEDURES AND CASE LAW  FRAUD UPON THE COURT  OBTAINING RELIEF BY

AN INDEPENDENT ACTION IN EQUITY ASSOCIATED WITH RULES 60 b, 60b3, 60 b6

and 60 C, 60 D  CITING CASE LAW U.S.BEGGERLY, 524 U.S. 38, 118 S. Ct. 1862, 141

L. Ed. 2d 32 (1998), APPLING v. STATE FARM Mut. Auto. Ins. Co. 340 F.3d 769, 780

(9th Cir. 2003),  SULLIVAN & CROMWELL, 922 F.2d 60, 70 (2d Cr. 1990), UNIVERSAL

OIL PRODUCTS Co.  V. ROOT REFINING Co, 328 U.S. 575, 66 S. Ct. 1176, 90 L. Ed.

1447 (1946), HAZEL –ATLAS GLASS Co. V. HARTFORD-EMPIRE Co., 322 U.S. 238 64

S. Ct. 997, 88 L. Ed. 1250 (1944) AND KING v. FIRST AMERICAN INVESTIGATIONS,

INC, 287 F.3d 91, 95 (2d Cir. 2002) FOR DAMAGES:

(1) PERSONAL INJURY, (2) FRAUDALENT CONCEALMENT OF CAMERA TAPED EVIDENCE OF THE PERSONAL INJURY) (3) VIOLATIONS OF PRIVACY, (4)NEGLIGENCE, (5) CIVIL RIGHTS VIOLATIONS 5TH AND 14TH AMENDMENTS, (6) RETALIATION, (7) OBSTRUCTION OF JUSTICE, (8) RACIAL DISCRIMINATION, (9) BREACH OF IMPLIED CONTRACT, (10) ANTI-TRUST VIOLATIONS, (11) UNJUST ENRICHMENT, (12) UNFAIR DEALINGS PERTAINING TO INTELLECTUAL PROPERTIES, (13) CONSPIRACY, (14) BREACH OF CONTRACT (15) FRAUD, AND (16) TORTIOUS INTEFERENCE OF CONTRACT, (17) RICO 18 U.S.C. Section 1962, REQUESTING INJUNCTIVE RELIEF TO UNSEAL FEDERAL FBI PROBE BASED ON UNLAWFUL ACTS OF THE PARTIES INVOLVED WITH CLAIMS AGAINST DEFENDANTS.

## THE PARTIES

Plaintiff David Louis Whitehead is a resident of Bossier, Louisiana and a citizen of the United States.

1. Defendants The Travelers Indemnity Company Inc., Travelers Companies Inc and their employee Gabrielle Bailey are residents of the State of New York and Texas. The Company's Principal address at 485 Lexington Ave, New York, New York. 10017.

2. NETFLIX INC is a resident of the State of New York. Defendant has principle business office located in the State of New York and California.

3. GEICO is a resident of the State of New York. Defendant has a principle business office located in the State of New York.

**Venue and Jurisdiction is proper pursuant to Federal Rules 1332 and 1338 Diversity Citizenship and Federal Question**.

## PART 1: FACTS

### Personal Injury: Statute of Limitations (6 years) on Fraudulent Concealment of Evidence

4.  On or about February 22, 2016, plaintiff was sitting at a computer terminal in the Shreveport Library, downtown Texas Street branch.  As plaintiff was leaving the computer terminal he did not notice the large object above  his left shoulder; and as plaintiff was attempting to leave the library computer terminal on the third floor, he walked into the large steel data box object causing stain neck injury to his head region.   **[See VA doctor's medical record stating strain neck injury].**

5.  Plaintiff alleges and believes that defendants and their clients were seriously aware that plaintiff injured his head and neck at the Shreveport Library on February 22, 2016, when it was reported and defendants had photographic evidence of the occurrence, facts that the accident did happened as reported.

6.  Plaintiff alleges and believes that Travelers Indemnity defendants and their employees and clients having photographic evidence of plaintiff's injuries was in contact with EastGate Chiropractor clinic, and advised Dr. Chad Havard's EastGate Chiropractor Clinic staff not to treat plaintiff for his injuries, and  that The Travelers Indemnity defendants would deny the plaintiff's personal injury claim, and that defendants would not compensate

Dr. Havard's office regarding treating the plaintiff, although The Travelers Indemnity defendants had photographic evidence that the accident did in fact occur as reported. Defendants action violated the plaintiff constitutional rights for medical treatment by Dr. Chad's office (1st, 5th and 14th amendments). In addition, defendants fraudulently withheld camera taped photographic evidence of the plaintiff's injury, and conspired with Dr. Havard's office not to treat plaintiff for the alleged injuries.

7. Travelers Indemnity Company Defendant's client the Shreveport Library also advised that plaintiff could not obtain photographic evidence and that all communications should be addressed to defendant Traveler's Insurance investigator **Gabrielle Bailey** who denied plaintiff's claim having the said Photographic evidence that the accident did occur.

8.  Travelers Indemnity Company Defendant's client the Shreveport Library (Caddo Parish) further advised plaintiff that he could not obtain the photographic evidence and that the authorities could obtain the copy by Louisiana law. Defendants denied plaintiff's request for the photographic evidence to prevail on his claim and interfered with plaintiff seeking medical treatment for the injury.

9.  Plaintiff immediately advised the employee who worked on the 3rd floor of the Library where the accident occurred. The employee was negligent and did not ask any of the witnesses who saw the incident on what occurred, however, she did manage to call her supervisor who reported the incident to Travelers Insurance company. Defendants did not call EMS nor the police.  Instead, defendant and their client placed a large desk underneath the large overhead object so others would not be injured from the

negligence data box.   Plaintiff believes that defendants and their client was negligent having the large steel data box over-head of library computer terminal and users, which in fact caused plaintiff's injury on February 22, 2016.

10.  Plaintiff believes and assert that after the accident involving his personal injury at the Library, employees of the Library placed a large podium under the large data box to prevent others from similar personal injuries.

11.  On or about February 27, 2016, Plaintiff was seen at the VA Medical Center for his head injury. VA Physician diagnosed that plaintiff had received a "Strain Neck" injury, after XRays were taken at the VA Medical Center.  Moreover, the doctor gave plaintiff a shot and recommended further treatment for the injury. VA Medical Center treated plaintiff for 10 weeks, including providing a harness for neck and head treatments of the injury.   VA Medical Center did not evaluate brain injuries due to the accident in the Library.

12. The Travelers Indemnity Company Defendant and their employees went on a witch hunt investigating plaintiff's other accidents.  Geico Insurance Company notified plaintiff that Traveler defendants contacted Geico about another accident in Texas, which plaintiff was not injured nor did he report any injuries.  However, plaintiff's car was down due to the accident involving other vehicles in front of him on I 20 East, in Texas. Plaintiff's vehicle's belt came off due to him evading the major accident in the weather storm.  Geico later improperly breached contract with plaintiff over the dispute. Travelers defendants interfered with contract between Geico and plaintiff.

Geico breached its contract with plaintiff due to tortious interference of contract by The Travelers Company and Travelers Indemnity Company and their employees.

13. On or about  February 27, 2017, plaintiff was advised by VA Medical Center that he needed a MRI relating to his neck  problems. Plaintiff complained that he felt numbness in his left shoulder and arm.  VA Doctor ordered a MRI.  **[See attached VA medical record (strained neck, as Exhibit 4].**

14. Plaintiff notified The Travelers Indemnity Defendants and their employees about the most recent development relating to his neck injury which had been treated by VA doctor on February 27, 2017.   The Travelers employee Ms. Bailey rejected compensation to the Veterans Administration. The Travelers Indemnity Company claims manager sent plaintiff an email rejecting compensation to Plaintiff for VA Medical Center.

15. Travelers Indemnity Company and Travelers Companies Defendants also advised the Veterans Administration employee Kimberly Rich that defendants would not compensate the personal injury claim although defendants had photographic evidence that the accident occurred as reported.

16. Prior to VA Medical Center treatment for his injury, which included 10 weeks of physical training, including a harness exercise, as stated, Plaintiff attempted to receive treatment from Dr. Chad Havard of East Chiropractor clinic on Shed Road in Bossier City, Louisiana.  However defendants The Travelers Companies, Travelers Indemnity Company and Ms. Gabrielle Bailey and other unknown employees of Travelers Company advised Dr.

8

Havard's clinic, that defendants would not pay cost for medical treatment
of the plaintiff, which was needed, due to negligence of Shreveport Library,
a client of the defendant.

Defendant's action advising Dr. Havard's clinic not to treat the plaintiff
prevented immediate treatment for his injury violated plaintiff's civil rights
(5th and 14th amendments, Negligence, Violations of Privacy and
Obstruction of Justice.

18. Dr. Chad Havard's clinic sent plaintiff an email stating that his office had
been in contact with The Travelers Indemnity Company on the matter and the
office management stated that Dr. Havard could not treat plaintiff unless
medical fees were paid.  Dr. Havard's  Office manager advised plaintiff that
their office always receive instructions from other Insurance Companies not to
treat certain patients, which is an admission to the plaintiff's allegations
against The Travelers  Indemnity Company for relief.

19. Plaintiff believes and assert that Travelers Indemnity defendants named in
    the above action in paragraphs 1 through 18, is related to the investigation
    of their representatives White & Case LLP, Wallpark LLC and associates,
    including Judge Paul L. Friedman.  Judge Friedman from 1994 through 2011
    was a General Partner with White & Case LLP and Wallpark LLC associates.
    Judge Friedman dismissed 11 of plaintiff's civil rights and copyright cases
    involving Hollywood studios for his clients, partners and associates of
    White & Case LLP and Wallpark LLC, mounting to fraud on the court, by
    officer of the court.  Judge Dee D. Drell in the case <u>David Louis Whitehead
    v. Parish of Caddo</u>, 17 cr306, W.D. Louisiana (Plaintiff's personal injury

claims for library accident), filed false statements on his pecuniary interest in this related case pertaining to his insurance and Hollywood financial stock holdings. (See statement (order) and pecuniary interest of the court (2017 Financial Disclosure Report of the Court), in which, facts show that the court filed a false statements in plaintiff's personal injury and anti-trust copyright cases as exhibits 1 and 2. Judge Drell in plaintiff's personal injury case, issued an order stating that the court did not own any so called interest in Hollywood and lenders. However, the court's 2017's financial disclosure records show that the court was holding financial interest in Walt Disney and Apple Inc, associated with Apple TV, violating the federal statutes (Exhibits 1 and 2). The court filed false statements in plaintiff's Personal Injury case against The Travelers Company's client Caddo Parish regarding his Hollywood financial interest and insurance interest. The court stated in his judicial order, which is a sworn statement that the court did not own any so called Hollywood studios and lenders interest. (See exhibit 1). In addition, the court filed a false statement concerning the court's Hollywood and Insurance financial interests associated with Travelers and related insurance companies, Walt Disney and Apple Inc (See exhibit 1 and 2). This was fraud on the court. Rule 60 b 3, and 60 b 6. Plaintiff has legal standing in this case due to fraud on the court by officers of the court, including Judge Drell. 18 U.S.C. Section 1962; Federal Rules of Civil Proc, 60 b3, 60 b (6), 60 d1 and civil rights violations 5th and 14th amendments of the US Constitution; 28 U.S.C. Section 1964 as amended, 1981, 1985 (3) and 1991 as amendment.

20.  Plaintiff believes and assert that Defendants The Travelers Indemnity Company and Ms. Gabrielle Bailey's wrongful acts against plaintiff's interest for medical treatment and compensation were both retaliation, violations of privacy and obstruction of justice and civil rights violations. The relationship between The Travelers Indemnity Company and White & Case LLP associates is representation purposes. White & Case LLP associated with Judge Friedman and Wallpark LLC represented Travelers Indemnity Company during time period of plaintiff's injury in 2016-2017. The Travelers Indemnity Company and Defendant Bailey  in 2016-2017 failed to provide camera taped evidence of the accident in the library, which is fraudulent concealment of evidence, extending the statutes of limitation to 6 years in the State of Connecticut and New York.

21.  Plaintiff believes and assert the factual summary of his claims as follows: On or about February 22, 2016, plaintiff was sitting at a computer terminal in the Shreveport, Library, downtown Texas Street branch.  As plaintiff was leaving the terminal he did not notice the large object (data box) to his left and above, and walked into the object causing the injury to his head and neck.  The Library member who observed plaintiff's injury failed to call EMS, or take names of witnesses of the injury.  Moreover, the Library and/or Parish of Caddo, nor Travelers' defendants and representatives would not give plaintiff the camera taped video of the accident.  The Library employee did manage to notify her supervisor, who contacted defendants about the occurrence, including plaintiff's injury.

Plaintiff attempted to obtain medical treatment from Dr. Havard's office, but was told by the medical center, that the Travelers Idemnity Company advised the clinic that they would not cover the medical cost for plaintiff's injuries, nor compensate the VA Medical Center.

On or about February 27, 2016, Plaintiff was seen at the VA Medical Center for his head injury. VA Physician diagnosed that plaintiff had received a "Strain Neck" injury, after Xrays were taken at the VA Medical Center. Plaintiff believes and alleges that he received a shot as well. (See attached record VA Ex 4).

22. Plaintiff believes and assert that Defendants and their client learned through video camera evidence that plaintiff did in fact hit his head on the large steel data box in the Library. The Library has cameras on the floors due to homeless people crowding there. Defendants were in contact with both plaintiff and Dr. Havard's office about the injury, and rejected compensation for the injury. Defendants advise Dr. Havard's office not to medically treat the plaintiff.

23. The Travelers Company, Travelers Companies and employees of the company sent plaintiff an email rejecting compensation to Plaintiff relating to the "Stain Neck Injury" dated February 22, 2016.

24. Plaintiff believes and asserts claims for relief: (1) Personal Injury on February 22, 2016; and (2) Defendants action of interfering with his treatment for the injury, (3) Defendants withholding camera evidence concerning the injury (4) refusing to provide plaintiff with the tape recorded camera evidence involving the injury which occurred on February 22, 2016, (4) Negligence, Mounting that Steel data box over the computer

terminal (5) Violations of Privacy, violated plaintiff's rights to seek medical assistance, Obstruction of Justice, Defendants failed to provide the camera taped evidence, and (6) Civil Rights violations, denying plaintiff the right to obtain medical treatment for injuries occurring at their clients place of business due to plaintiff's race (Afro American-Black).

## PART 2: FACTS

25. On or about November 18, 2016, Attorney Alan Pesnell sent Netflix Content CEO Mr. Ted Sarandos a letter stating that his assistant Alexis requested plaintiff to obtain counsel and forward his 30 film proposal to Netflix for review for production.  Attorney Pesnell sent Netflix both a letter and plaintiff's 30 film ideas, however, that same day,  after Netflix obtained Attorney Pesnell's letter and plaintiff's intellectual property 30 film ideas which were copyrighted, Netflix immediately rejected the proposal. **See (exhibits 5** letter of Attorney Pesnell) and (30 film proposal attachment to the letter as  **exhibit 6**).  Netflix defendants' action mount to breach of implied contractual agreement due to the oral communication between Netflix and plaintiff.   The statute of limitations regarding this matter breach of implied contractual agreement is 6 years in Connecticut and New York.

26. Pertaining to paragraph  25, plaintiff alleges breach of implied contract between him and Netflix defendants.

## Claim 1

## Personal Injury

Plaintiff was injured by The Travelers Indemnity Company's client Shreveport Library of Caddo Parish.  The injury was caused by a large steel object (data box) in the wrong place causing injury to the plaintiff.

## Claim 2

## Negligence

Travelers Indemnity and Travelers Companies Defendants and client were negligent causing injury to the plaintiff by placing the large data box object in the wrong place causing injury to the plaintiff.  Defendants and their employees failed to call EMS or collect the names of the witnesses of the plaintiff's injury  in the Computer room, on the 3rd floor of the Library.   Defendants were also negligent failing to provide plaintiff with camera taped evidence of his injuries.

## Claims 3

### Violations of Privacy

Travelers Indemnity Defendants and their agents violated plaintiff's privacy by instructing the office of Dr. Chad Havard not to treat plaintiff because The Travelers Indemnity Company and other defendants was denying the claims for relief involving the treatment.  Defendants also contacted Geico attempting to interfere with plaintiff and Geico Insurance contract by invading plaintiff's privacy and Tortious interference with his Geico contract.

## Claim 4

### Tortious interference with his Geico contract.

Travelers Indemnity Defendants contacted Geico on plaintiff's injuries interfering with his contract with Geico.

## Claim 5

### Breach of Contract

Geico Defendants improperly breached contract with plaintiff due to Travelers' defendants tortious interference with plaintiff and Geico's contract.

## Claim 6

### Intentional Infliction of Emotional Distress

Travelers Indemnity Defendants and employees action involving this case caused intentional infliction of emotional distress refusing to allow plaintiff to be treated by Dr. Havard's Office.

## Claim 7

### Obstruction of Justice.

(1) Travelers Indemnity and Travelers Companies Defendants and their employees obstructed justice when defendants advised Dr. Havard's Office not to treat plaintiff for his personal injuries and that defendants would not pay the claim, but rejected the claim for relief.  This obstruction of justice involves defendant's serious knowledge of plaintiff's injuries at the Library, but decline to provide plaintiff with camera taped evidence of  plaintiff's injuries.

(2)  Travelers Indemnity Company, Travelers Companies and employees failed to provide plaintiff with the camera taped evidence pertaining to the accident which caused injury to the plaintiff, mounting to fraudulent concealment of camera taped evidence.

## Claim 8

## Retaliation

In 2016-17, Travelers Indemnity Company Defendants were  represented by White & Case LLP Law Firm tied to Judge Paul L. Friedman and Wallpark LLC. Plaintiff has been in legal dispute with White & Case LLP, Wallpark LLC and Judge Friedman for years due to Judge Friedman's General Partnership as a federal judge with White & Case LLP and associates which seriously violates the federal statutes and law.   The court dismissed plaintiff's 11 cases as Partner with his law firm.  18 U.S.C. Section 1962 C, 18 U.S.C. Section 1503, and 18 U.S.C. Section 371. In addition, Retaliation and Fraud occurred involving Judge Dee D. Drell who held Hollywood, Insurance and Financial Lenders financial interest presiding on plaintiff's personal injury case and related Hollywood case against Netflix.  Judge Drell's false statements impacted plaintiff's case against Netflix Inc, in re: Whitehead v. Netflix, et al., 17cv225, W.D. Louisiana.  Both Judges Friedman and Drell filed false statements in plaintiff's cases.  Rico 18 U.S.C. Section 1962, Obstruction of Justice, 18 U.S.C. 1503, and Conspiracy 18 U.S.C. 371.   Fraud on the court (Fed. Rules of Civil Procedures: 60 b3, and 60 b6); 28 U.S.C. Section 1964, as amended 1981, 1985 (3), and 1991 as amended.

## Claim 9

## Discrimination (Race-Black) Civil Rights Violations 5th and 14th Amendments

Travelers Indemnity Company Defendants  actions against the plaintiff violated plaintiff civil rights pursuant to 5th and 14th amendments because of race (African American). Defendants above action pursuant to paragraphs 1 through 25 violated plaintiff's constitutional rights to receive medical treatment from Dr. Havard's office, knowing that the accident did in fact occur.  Travelers Defendants has evidence of the plaintiff's injury through video camera material, but failed to provide the information to plaintiff and the courts, mounting to fraudulent concealment of evidence associated with Obstruction of justice.  28 U.S.C. Section 1964, as amended 1981, 1985 (3), and 1991 as amended.  5th and 14th amendments.

The Jurists Judge Friedman and Judge Drell retaliated against plaintiff and violated his constitutional rights involving fraud on the court (false statements, partnerships with law firms and LLCs), while presiding on the federal bench, ruling adversely against plaintiff, requiring the court to unseal the FBI investigation into the matter referred by Department of Justice Chief Criminal Attorney Mary J. Mudrick of the Western District of Louisiana. (See attached exhibit 3, Criminal Chief Mary J. Mudrick) pertaining to plaintiff's intellectual property and civil rights cases).

 Netflix defendants failed to provide plaintiff a contract due to his race (Afro American-black) violating civil rights laws of the United States going back to 1866. See *Comcast v. National Association of African-American-Owned Media*, 589 U.S. ___ (2020).

## Claim 10

## (9 B FRAUD) &  Fraud

Travelers  Indemnity Company and Travelers Insurance Defendants  action against plaintiff mounts to fraud and obstruction of justice.  Defendants denied plaintiff's claim having material evidence of the occurrence and instructed the care-taker Dr. Havard of East Gate Chiropractor Clinic not to treat plaintiff and that defendants would not pay for medical treatment, basically interfering with plaintiff's treatment and privacy for that treatment. Defendants also withheld camera taped evidence of the plaintiff's injury in the Library.  In addition, Fraud on the court occurred when Defendant's counsel filed false statements in the Connecticut case (Exhibit 7), and the Connecticut court clerk's office in 2017 failed to file the plaintiff's complaint but returned it without file-stamp. Judge in Connecticut was appointed by President Obama, with Obamas having has substantial Hollywood contracts with Netflix Inc. Rule 60 b (Mistake on Statutes of Limitations) 60 b3, 60 b6, and 60 d1 applies.  The court failed to recuse himself and made a mistake with his reading of the plaintiff's second amended complaint pursuant to Haines v. Kerner, 1972.  The court failed to review the record liberally relating to fraudulent concealment of evidence by Travelers Indemnity Company and breach of implied contract pertaining to Netflix Inc and documents of Attorney Alan Pesnell to Netflix, resulting in implied breach of contract.

The Connecticut court made a mistake: Rule 60 b mistake on the Statutes of Limitation regarding these claims alleged by the Pro se plaintiff.  Statutes of Limitation is 6 years in both Connecticut and New York for breach of implied contract and fraudulent concealment of evidence.   The court also denied

19

plaintiff's pleadings without restating them, and the court failed to recuse himself appointed by Netflix client President Obama, who has substantial financial contracts with Netflix Inc, through his company Higher Grounds Entertainment. 28 U.S.C. Section 455 a, b1.   See separate 9B Fraud statement.

.

## Claim 11

## FRAUD

## Judicial Fraud on the Court

The fraud involving the courts: Judges Drell and Friedman and others having massive conflicts -- financial interest, is definitely fraud on the court.  For instance, every Judge in the State of Louisiana had financial or some sort of organizational conflict of interest ruling adversely against plaintiff, which affords this honorable court to unseal the FBI investigation into this case.  Judge Drell and Judge Friedman filed false statements relating to plaintiff's Personal Injury, Civil Rights and Copyright ANTI-TRUST cases.  President Obama and his spouse has a Hollywood company named **Higher Ground Productions which has substantial contracts** with Netflix, requiring Obama federal appointed judges to recuse themselves.  Some failed to do so, including Connecticut Judge, which affords plaintiff a second bites of the apple relating his litigation.  28 U.S.C. Section 1964, as amended 1981, 1985 (3), and 1991 as amended.5[th] and 14th amendments.Rule 60 b 3, and 60 b 6.  (See attached exhibits 1 through 6).

Opposing counsel for Travelers Indemnity Company filed a false statement in the Connecticut case regarding plaintiff request to amend his Third Amended

Complaint.  Opposing counsel's fraud (false statements) interfered with plaintiff's rights to discovery and proceed in the court of law. See attached exhibit 7.

## Claim 12

## Conspiracy

The named defendants and unnamed Judges (Friedman and Drell) conspired against the plaintiff in these claims. It's totally unfortunate that plaintiff's cases were assigned to judges having conflicts of interest as such in these matters. The plaintiff alleges both conspiracy and retaliation relating to the case.  The Travelers Indemnity Company  and Travelers Companies defendants did in fact contact Dr. Havard's office to prevent plaintiff's receiving medical treatment for his injuries; and the Judges Drell and Friedman  and others held financial and organizational interest in total conflict presiding on plaintiff's cases, ruling adversely relating to both personal interest and Netflix Hollywood defendant associated with the Obamas.

## Claim 13

## Pain AND Suffering Violations

Travelers Indemnity Defendants action caused Pain and Suffering for plaintiff, to wait for medical treatment from VA Hospital, instead of Dr. Havard's clinic.

## Claim 14

## UNJUST ENRICHMENT

Netflix defendants failed to honor their oral contract regarding plaintiff's 30 film deal proposal and his copyright intellectual properties.

## Claim 15

## UNFAIR DEALINGS ON BUSINESS PROPOSAL

Netflix defendants' failure to honor their oral contract agreement regarding plaintiff's 30 film deal proposal was an act of unfair dealings on business affairs associated with  implied contract.

## Claim 16

## BREACH OF IMPLIED CONTRACT

Netflix defendants failure to honor their oral implied contract regarding plaintiff's 30 film deal proposal provides a serious breach of implied contractual agreement covered by 6 year statute of limitation doctrine.

## Claim 17

## ANTI-TRUST VIOLATIONS

Netflix defendants above and below paragraphs alleged acts violated US Anti-Trust Violations, denying plaintiff's 30 film proposal, submitted by Attorney Pesnell.  Netflix defendants solicited plaintiff's copyrighted intellectual property ideas for review, but immediately denied the 30 film proposal after receiving it from Attorney Pesnell.

## Claim 18

## RICO 18 U.S.C. Section 1962 C

Defendants committed RICO violations relating to both plaintiff's personal injury and Intellectual property.

## Claim 19

## Breach of Implied Contract ii

Netflix defendant's alleged act involves breach of implied contract with plaintiff when Attorney Pesnell sent a letter and intellectual property  30 film ideas to Netflix in November 16, 2016, which were immediately rejected by the Netflix company.   This act caused a breach of implied contract due to oral and written communication between the parties.   Plaintiff's Intellectual property (30 film ideas) was solicited by Netflix Inc.

23

**Claim 20**

**Fraudulent Concealment of Evidence**

A. Travelers Indemnity Company , Travelers Insurance Companies and employees fraudulently concealed camera taped evidence of plaintiff's injury concerning the accident in the Library.   Defendants learned that the accident occurred having the camera taped evidence but failed to provide the material to the plaintiff and/or the court.

B.  Netflix Inc through oral communication between plaintiff and Netflix and Netflix employee Alexis, who works for CEO of Content Ted Sarandos, fraudulently concealing the oral agreement and communication relating to plaintiff's 30 film proposal sent to Netflix Inc., by Attorney Pesnell on behalf of plaintiff, breached implied contract denying proposal. See exhibits 5 and 6.

In conclusion, plaintiff demands Trial by Jury with damages and compensatory damages as deemed by the court of law on the value of his claims far over the amount of $100,000   related to diversity jurisdiction case.

David Louis Whitehead

1906 Scott St.

Bossier, Louisiana 71111

Cell: 318-820-5029

Email: Daouddavidlouis @yahoo.com    Date: January 26, 2022

Case 1:22-cv-00883-UA   Document 1   Filed 01/31/22   Page 23 of 50
Case 3:20-cv-01140-VAB   Document 19   Filed 11/10/20   Page 17 of 40

Case 1:17-cv-00225-DDD-JPM   Document 54-2   Filed 12/12/18   Page 1 of 37 PageID #: 608

Case 1:17-cv-00306-DDD-JPM   Document 13   Filed 05/03/17   Page 1 of 1 PageID #: 46

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

MAY - 3 2017

TONY R. MOORE, CLERK
BY: _____
         DEPUTY

P.. r ....

[EX 1]

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

DAVID LOUIS WHITEHEAD                    CIVIL ACTION NO. 1:17-CR-00306

-vs-

PARISH OF CADDO                          JUDGE DEE DRELL

                                MAGISTRATE JUDGE PEREZ-MONTES

## ORDER

The motion by Mr. Whitehead for recusal of the undersigned is DENIED. (Doc. 12). The undersigned Chief Judge has NO interest in, is not related to, and has no conflict of interest concerning Travelers Insurance Company nor in the so called "Hollywood studios and lenders." Mr. Whitehead is hereby WARNED that future false or malicious misrepresentations concerning the undersigned may result in sanctions and/or contempt of court. His "Affidavit" (Doc. 12-1) contains multiple misrepresentations and false accusations. [1]

SIGNED on this 2nd day of May, 2017 at Alexandria, Louisiana.

DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[1] Decision by this Judge is appropriate. See The Chitimacha Tribe of Louisiana v. Harry L. Laws Co. Inc., 690 F.2d 1157 (5th Cir. 1982), United States v. Jordan 49 F. 3d 152 (5th Cir. 1995), and Laird v. Tatum, 409 U.S. 823 (1972).

Case 1:22-cv-00883-UA   Document 1   Filed 01/31/22   Page 24 of 50
Case 3:20-cv-01140-VAB   Document 19   Filed 11/10/20   Page 18 of 40

Case 1:17-cv-00225-DDD-JPM   Document 54-2   Filed 12/12/18   Page 2 of 37 PageID #:  609

| AO 10<br>Rev. 1/2018 | FINANCIAL DISCLOSURE REPORT<br>FOR CALENDAR YEAR 2017 *EX 2* | Report Required by the Ethics<br>in Government Act of 1978<br>(5 U.S.C. app. §§ 101-111) |

| 1. Person Reporting (last name, first, middle initial)<br><br>Drell, Dee D. | 2. Court or Organization<br><br>Western Distric LA, Alexandria | 3. Date of Report<br><br>06/28/2018 |
|---|---|---|

| 4. Title (Article III Judges indicate active or senior status;<br>magistrate judges indicate full- or part-time)<br><br>District Judge (Senior Status) | 5a. Report Type (check appropriate type)<br><br>☐ Nomination      Date<br>☐ Initial   ☑ Annual   ☐ Final<br><br>5b.  ☐   Amended Report | 6. Reporting Period<br><br>01/01/2017<br>to<br>12/31/2017 |
|---|---|---|

| 7. Chambers or Office Address<br><br>515 Murray Street<br>Alexandria, LA 71309 |
|---|

| *IMPORTANT NOTES: The instructions accompanying this form must be followed. Complete all parts,*<br>*checking the NONE box for each part where you have no reportable information.* |
|---|

# I. POSITIONS. *(Reporting individual only; see pp. 9-13 of filing instructions.)*

☐  NONE *(No reportable positions.)*

| POSITION | NAME OF ORGANIZATION/ENTITY |
|---|---|
| 1.  Board Member (Governor) | The Elongated Collectors |
| 2. | |
| 3. | |
| 4. | |
| 5. | |

# II. AGREEMENTS. *(Reporting individual only; see pp. 14-16 of filing instructions.)*

☑  NONE *(No reportable agreements.)*

| DATE | PARTIES AND TERMS |
|---|---|
| 1. | |
| 2. | |
| 3. | |

Case 1:22-cv-00883-UA   Document 1   Filed 01/31/22   Page 25 of 50
Case 3:20-cv-01140-VAB   Document 19   Filed 11/10/20   Page 19 of 40

Case 1:17-cv-00225-DDD-JPM   Document 54-2   Filed 12/12/18   Page 3 of 37 PageID #: 610

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 2 of 9 | Drell, Dee D. | 06/28/2018 |

## III. NON-INVESTMENT INCOME. *(Reporting individual and spouse; see pp. 17-24 of filing instructions.)*

### A. Filer's Non-Investment Income

[✓] NONE *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE | INCOME (yours, not spouse's) |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |

### B. Spouse's Non-Investment Income – *If you were married during any portion of the reporting year, complete this section.*
*(Dollar amount not required except for honoraria.)*

[ ] NONE *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE |
|---|---|
| 1. 2017 | Retirement Benefits, LASERS |
| 2. 2017 | Self Employed counselor–███████████████████–Service fees |
| 3. | |
| 4. | |

## IV. REIMBURSEMENTS — *transportation, lodging, food, entertainment.*
*(Includes those to spouse and dependent children; see pp. 25-27 of filing instructions.)*

[✓] NONE *(No reportable reimbursements.)*

| SOURCE | DATES | LOCATION | PURPOSE | ITEMS PAID OR PROVIDED |
|---|---|---|---|---|
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |

| FINANCIAL DISCLOSURE REPORT<br>Page 3 of 9 | Name of Person Reporting<br>Drell, Dee D. | Date of Report<br>06/28/2018 |
| --- | --- | --- |

## V. GIFTS. *(Includes those to spouse and dependent children; see pp. 28-31 of filing instructions.)*

☑ NONE *(No reportable gifts.)*

| SOURCE | DESCRIPTION | VALUE |
| --- | --- | --- |
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

## VI. LIABILITIES. *(Includes those of spouse and dependent children; see pp. 32-33 of filing instructions.)*

☐ NONE *(No reportable liabilities.)*

| CREDITOR | DESCRIPTION | VALUE CODE |
| --- | --- | --- |
| 1. USAA Savings Bank | Credit Card | J |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

Case 1:22-cv-00883-UA   Document 1   Filed 01/31/22   Page 27 of 50
Case 3:20-cv-01140-VAB   Document 19   Filed 11/10/20   Page 21 of 40

Case 1:17-cv-00225-DDD-JPM   Document 54-2   Filed 12/12/18   Page 5 of 37 PageID #:  612

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 4 of 9 | Drell, Dee D. | 06/28/2018 |

## VII. INVESTMENTS and TRUSTS — income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing Instructions.)

☐ NONE *(No reportable income, assets, or transactions.)*

| | A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|---|
| 1. | American Funds Global Balanced Fund, Class C | A | Dividend | J | T | Buy (add'l) | 03/30/17 | J | | |
| 2. | Disney Walt Co COM | A | Dividend | K | T | Buy (add'l) | 01/20/17 | J | | |
| 3. | Red River Bank | | None | L | T | | | | | |
| 4. | General Electric Co. COM | A | Dividend | J | T | | | | | |
| 5. | First TR Exchange | A | Dividend | J | T | Buy (add'l) | 01/20/17 | J | | |
| 6. | Equitable Variable Life Ins. Co. (See Part VIII) | B | Interest | J | T | | | | | |
| 7. | Provident Life & Accident Ins. Co. (See Part VIII) | A | Interest | J | T | | | | | |
| 8. | Powershares Global Exchange | A | Dividend | K | T | | | | | |
| 9. | | | | | | | | | | |
| 10. | | | | | | | | | | |
| 11. | | | | | | | | | | |
| 12. | Select Sector SPDR TR SBI INT_ENERGY | A | Dividend | K | T | | | | | |
| 13. | Apple Inc Com | A | Dividend | K | T | | | | | |
| 14. | | | | | | | | | | |
| 15. | La Dept of Corrections Credit Union | A | Interest | J | T | | | | | |
| 16. | | | | | . | | | | | |
| 17. | JANUS Worldwide Fund | A | Dividend | K | T | | | | | |

1. Income Gain Codes:      A =$1,000 or less          B =$1,001 - $2,500          C =$2,501 - $5,000          D =$5,001 - $15,000          E =$15,001 - $50,000
   (See Columns B1 and D4)   F =$50,001 - $100,000     G =$100,001 - $1,000,000   H1 =$1,000,001 - $5,000,000
2. Value Codes                 J =$15,000 or less         K =$15,001 - $50,000       L =$50,001 - $100,000      M =$100,001 - $250,000
   (See Columns C1 and D3)   N =$250,001 - $500,000    O =$500,001 - $1,000,000   P1 =$1,000,001 - $5,000,000   P2 =$5,000,001 - $25,000,000
                              P3 =$25,000,001 - $50,000,000                        P4 =More than $50,000,000
3. Value Method Codes         Q =Appraisal              R =Cost (Real Estate Only)  S =Assessment              T =Cash Market
   (See Column C2)            U =Book Value             V =Other                   W =Estimated

Case 1:22-cv-00883-UA   Document 1   Filed 01/31/22   Page 28 of 50
Case 3:20-cv-01140-VAB   Document 19   Filed 11/10/20   Page 22 of 40

Case 1:17-cv-00225-DDD-JPM   Document 54-2   Filed 12/12/18   Page 6 of 37 PageID #:  613

## FINANCIAL DISCLOSURE REPORT
Page 5 of 9

| Name of Person Reporting | Date of Report |
|---|---|
| Drell, Dee D. | 06/28/2018 |

### VII. INVESTMENTS and TRUSTS – *Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 18. JANUS Balanced Fund | C | Distribution | L | T | | | | | |
| 19. Retail Properties of America, common (See Part VIII) | A | Dividend | J | T | | | | | |
| 20. | | | | | | | | | |
| 21. American Electric Power Common Stock | A | Dividend | K | T | | | | | |
| 22. | | | | | | | | | |
| 23. Capital One Fin. Corp Com | A | Dividend | J | T | | | | | |
| 24. | | | | | | | | | |
| 25. | | | | | | | | | |
| 26. | | | | | | | | | |
| 27. | | | | | | | | | |
| 28. Brit. Am. Tobacco PLC (formerlyReynolds Amern Inc Com) | B | Dividend | K | T | | | | | |
| 29. Southern Co Com | B | Dividend | K | T | | | | | |
| 30. | | | | | | | | | |
| 31. | | | | | | | | | |
| 32. | | | | | | | | | |
| 33. | | | | | | | | | |
| 34. | | | | | | | | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| 2. Value Codes (See Columns C1 and D3) | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | | |
| | | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | | |
| | U =Book Value | V =Other | W =Estimated | | |



Case 1:22-cv-00883-UA   Document 1   Filed 01/31/22   Page 29 of 50
Case 3:20-cv-01140-VAB   Document 19   Filed 11/10/20   Page 23 of 40

Case 1:17-cv-00225-DDD-JPM   Document 54-2   Filed 12/12/18   Page 7 of 37 PageID #: 614

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 6 of 9 | Drell, Dee D. | 06/28/2018 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing Instructions.)*

[ ] NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 35. | | | | | | | | | |
| 36. FPA Crescent Portfolio | B | Dividend | K | T | Buy (add'l) | 05/09/17 | J | | |
| 37. | | | | | | | | | |
| 38. Target Corp Com | A | Dividend | | | Sold (part) | 03/30/17 | J | A | |
| 39. Target Corp Com | A | Dividend | | | Sold | 04/04/17 | J | A | |
| 40. | | | | | | | | | |
| 41. | | | | | | | | | |
| 42. | | | | | | | | | |
| 43. | | | | | | | | | |
| 44. | | | | | | | | | |
| 45. | | | | | | | | | |
| 46. Vanguard World FDS Financials | A | Dividend | J | T | Buy | 01/20/17 | J | | |
| 47. Vanguard World Mega Cap Growth Fund | A | Dividend | K | T | Buy (add'l) | 05/09/17 | J | | |
| 48. Vanguard Whitehall Funds, Inc. | B | Dividend | L | T | | | | | |
| 49. Brokerage Money Market (Account #1), FSC Securities Corp.) | A | Interest | L | T | | | | | |
| 50. ishares TR S&P Moderate | A | Dividend | K | T | Buy (add'l) | 02/06/17 | J | | |
| 51. ishares TR S&P Moderate | B | Dividend | K | T | Buy (add'l) | 05/09/17 | K | | |

1. Income Gain Codes:    A =$1,000 or less    B =$1,001 - $2,500    C =$2,501 - $5,000    D =$5,001 - $15,000    E =$15,001 - $50,000
(See Columns B1 and D4)    F =$50,001 - $100,000    G =$100,001 - $1,000,000    H1 =$1,000,001 - $5,000,000    H2 =More than $5,000,000
2. Value Codes    J =$15,000 or less    K =$15,001 - $50,000    L =$50,001 - $100,000    M =$100,001 - $250,000
(See Columns C1 and D3)    N =$250,001 - $500,000    O =$500,001 - $1,000,000    P1 =$1,000,001 - $5,000,000    P2 =$5,000,001 - $25,000,000
    P3 =$25,000,001 - $50,000,000    R =Cost (Real Estate Only)    S =Assessment    P4 =More than $50,000,000
3. Value Method Codes    Q =Appraisal    V =Other    W =Estimated    T =Cash Market
(See Column C2)    U =Book Value

Case 1:22-cv-00883-UA   Document 1   Filed 01/31/22   Page 30 of 50
Case 3:20-cv-01140-VAB   Document 19   Filed 11/10/20   Page 24 of 40

Case 1:17-cv-00225-DDD-JPM   Document 54-2   Filed 12/12/18   Page 8 of 37 PageID #: 615

| FINANCIAL DISCLOSURE REPORT<br>Page 7 of 9 | Name of Person Reporting<br><br>Drell, Dee D. | Date of Report<br><br>06/28/2018 |
|---|---|---|

## VII. INVESTMENTS and TRUSTS — income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE *(No reportable income, assets, or transactions.)*

| A.<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B.<br>Income during<br>reporting period | | C.<br>Gross value at end<br>of reporting period | | D.<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.,<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 52. | | | | | | | | | |
| 53. | | | | | | | | | |
| 54. | | | | | | | | | |
| 55. | | | | | | | | | |
| 56. | | | | | | | | | |
| 57. | | | | | | | | | |
| 58. | | | | | | | | | |

1. Income Gain Codes:    A =$1,000 or less    B =$1,001 - $2,500    C =$2,501 - $5,000    D =$5,001 - $15,000    E =$15,001 - $50,000
   (See Columns B1 and D4)    F =$50,001 - $100,000    G =$100,001 - $1,000,000    H1 =$1,000,001 - $5,000,000    H2 =More than $5,000,000
2. Value Codes    J =$15,000 or less    K =$15,001 - $50,000    L =$50,001 - $100,000
   (See Columns C1 and D3)    N =$250,001 - $500,000    O =$500,001 - $1,000,000    P1 =$1,000,001 - $5,000,000    P2 =$5,000,001 - $25,000,000
    P3 =$25,000,001 - $50,000,000        P4 =More than $50,000,000
3. Value Method Codes    Q =Appraisal    R =Cost (Real Estate Only)    S =Assessment    T =Cash Market
   (See Column C2)    U =Book Value    V =Other    W =Estimated

Case 1:22-cv-00883-UA   Document 1   Filed 01/31/22   Page 31 of 50
Case 3:20-cv-01140-VAB   Document 19   Filed 11/10/20   Page 25 of 40

Case 1:17-cv-00225-DDD-JPM   Document 54-2   Filed 12/12/18   Page 9 of 37 PageID #:  616

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 8 of 9 | Drell, Dee D. | 06/28/2018 |

## VIII. ADDITIONAL INFORMATION OR EXPLANATIONS. *(Indicate part of report.)*

From Part VII, line 1: Income includes mix of dividend and minimal cap. gain distribution
From Part VII, line 18: Income includes mix of dividend and cap gaindistributions
From Part VII
From Part VII, line 36: Income includes mix of dividend and cap gain distributions
From Part VII, line 28: Merger Security Exchange transaction occurred 7/25/17
From Part VII, line 39: This transaction wasa leftover oliquidation of a partial share after main sale of 3/30/17
From Part VII, lines 50-51: The software will not allow the value code section to be left blank. There were 2 BUY transactions during 2017. However we only have a final value  that includes all ishares holdings. It is suggested that the line 50 codes be ignored to prevent an improper skewing of the true value of those holdings.

From Part VII, lines 6 and 7. : In regard to Equitable Variable Life Ins. Co and  Provident Life & Accident Insurance Company. Both are universal or variable life policies. NO investment options have ever been selected. Any funds paid in are applied only to increase cash value/death benefit only.

Case 1:22-cv-00883-UA   Document 1   Filed 01/31/22   Page 32 of 50
Case 3:20-cv-01140-VAB   Document 19   Filed 11/10/20   Page 26 of 40

Case 1:17-cv-00225-DDD-JPM   Document 54-2   Filed 12/12/18   Page 10 of 37 PageID #: 617

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 9 of 9 | Drell, Dee D. | 06/28/2018 |

## IX. CERTIFICATION.

I certify that all information given above (including information pertaining to my spouse and minor or dependent children, if any) is accurate, true, and complete to the best of my knowledge and belief, and that any information not reported was withheld because it met applicable statutory provisions permitting non-disclosure.

I further certify that earned income from outside employment and honoraria and the acceptance of gifts which have been reported are in compliance with the provisions of 5 U.S.C. app. § 501 et. seq., 5 U.S.C. § 7353, and Judicial Conference regulations.

Signature: s/ Dee D. Drell

NOTE: ANY INDIVIDUAL WHO KNOWINGLY AND WILLFULLY FALSIFIES OR FAILS TO FILE THIS REPORT MAY BE SUBJECT TO CIVIL AND CRIMINAL SANCTIONS (5 U.S.C. app. § 104)

Committee on Financial Disclosure
Administrative Office of the United States Courts
Suite 2-301
One Columbus Circle, N.E.
Washington, D.C. 20544

[ EX3 ]

From: Mary.Mudrick@usdoj.gov
To: daouddavidlouis@hotmail.com
Subject: RE: Consent to a Stay, pending Evidenciary Hearings
Date: Mon, 9 Apr 2012 19:44:44 +0000

Mr. Whitehead:

Good afternoon. I have not had an opportunity to fully review the documents you left with my office. However, those documents and our conversation dealt with a potential criminal matter which the FBI will have to investigate. As I explained on Wednesday, the Criminal Section of the United States Attorney's Office for the Western District of Louisiana is not an investigative body. We prosecute violations of federal law that federal law enforcement agencies refer to us. I will send the information you have provided to the FBI.

As it relates to your request in the below email concerning a stay, I am not the proper person to consent or oppose on behalf of the United States government. It appears the matter you are referring to is a civil matter. As I explained to you on Wednesday, I am the Criminal Chief in the Shreveport office. I do not handle civil matters for the government and as such cannot agree or disagree with your request.

Mary J. Mudrick

Criminal Chief-Shreveport

Western District of Louisiana

300 Fannin Street, Suite 3201

Shreveport, LA 71101

(318) 676-3600

VA EX 4

# Progress Notes

```
                wall tenderness or bony step-off.
Abdomen:   BS+, soft, non-tender, non-distended. No bruits, guarding, or
           rigidity.  No organomegaly.  No masses palpated.
Neck:    Supple. No JVD, bruits, thyromegaly, lymphadenopathy, or tenderness. No
         midline cervical tenderness. No paravertebral muscle tenderness. Good
         ROM.
Back:    No midline lumbar tenderness. No paravertebral muscle tenderness. Full
         ROM. DTR intact and symmetric at knees. SLR negative bilaterally. 5/5
         strength BLE.
Extremities:  No swelling, erythema, heat, tenderness. No laxity at any joint.
              Full range of motion. No discoloration or edema. 2+ radial and
              dorsalis pedis pulses bilaterally. Full range of motion.
Knees:  No swelling, erythema, heat, tenderness. No effusions. Full ROM
        without crepitus. No obvious ligamentous laxity. DTR intact and
        symmetric at knees. 5/5 strength BLE. No calf tenderness.
Skin:   Warm and dry. No lesions or discolorations.
Lymph/Heme:     No bruises. No lymphadenopathy.
CNS:   CN II-XII grossly intact. AAO x 3. Normal gait and speech. 5/5 strength
       BLE and BUE. Strong and equal grip bilaterally. Normal rapid alternating
       movements, finger to nose, heel to toe walk, rhomberg, and pronator
       drift. DTRs intact and symmetric bilaterally.
Psych:  AAO x 3. Normal affect. Normal speech.  Responds appropriately to
        verbal commands.  Mood and affect are normal.  No evidence of psychosis.
x ray c spine-DJD seen.No acute fracture or dislocation

12. DIAGNOSTIC IMPRESSIONS:  Neck strain

13. PLAN: Pt is clinically stable,nad.
           Start mobic,flexeril.
           F/U PCP 2 WEEKS.

DISPOSITION-Home

     PAIN MANAGEMENT: mobic

14. PATIENT'S CONDITION AT DISCHARGE: stable

PATIENT EDUCATION
LEARNING NEEDS (PATIENT AND/OR FAMILY)
Patient/family was instructed on medical condition, self care, and
treatment plan or procedures.

***************************************************************
DISCHARGE INSTRUCTIONS GIVEN: yes

***************************************************************
Patient/family was instructed about understanding pain, risk for pain, the
pain assessment process and methods for pain management.
Expresses willingness to learn.
```

| PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available) | VISTA Electronic Medical Documentation |
|---|---|
| WHITEHEAD,DAVID LOUIS<br>1906 SCOTT<br>BOSSIER CITY, LOUISIANA  71111 | Printed at SHREVEPORT VAMC |

[EX 5]

## THE PESNELL LAW FIRM
### (A PROFESSIONAL LAW CORPORATION)
H.C. Beck Building, Suite 1100
400 Travis Street
Shreveport, Louisiana 71101

BILLY R. PESNELL.
J. WHITNEY PESNELL.*
W. ALAN PESNELL.*

*ALSO ADMITTED TO PRACTICE IN TEXAS
AND THE DISTRICT OF COLUMBIA

MAILING ADDRESS
POST OFFICE BOX 1794
SHREVEPORT, LOUISIANA 71166-1794
TELEPHONE: (318) 226-5577
TELECOPY: (318) 226-5578
EMAIL
ALAN@PESNELLLAWFIRM.COM

November 18, 2016

Mr. Ted Sarandos, Chief Content Officer
Netflix
100 Winchester Circle
Los Gatos, CA 95032
tsarandos@netflix.com
asst_originalcontent@netflix.com

Re:   David Whitehead; Various Film Projects.

Dear Mr. Sarandos:

I represent David Whitehead in regard to certain film and theatrical projects he is working on and contemplating for the near future. My understanding is that David has been in contact with your assistant, Alexis, concerning submission of his projects for production.

On behalf of Mr. Whitehead, I am submitting to your office a listing and brief synopsis of a major proposal for a multi-film deal, involving my client David Whitehead, screenwriter, Executive Producer, Playwright, Theatrical Director, and Actor. An example of one of the projects on the submission is a project adapted from musical play "My Aretha: the life of Aretha Franklin and Rev. C. L. Franklin" (referred to herein as "Aretha"). That play met with critical success in the Washington Times in 2002. Also included in the synopsis is a project entitled "Erykah Badu in Paris with Momma Voodoo" which has received interest from others in the industry.

Film maker Charles Burnett in 2005, sent my client an email and attachment stating that the "Aretha" project "... sounds very inviting and will make wonderful film." Moreover, in 2008, award winning film maker Woody Allen, through his agent

at ICM Talent, requested a financial offer to direct "Aretha".   Howard University film professor Alonzo Crawford stated, "I am writing to lend my support to this exciting musical drama film about Aretha Franklin and her contributions as a vocalist and performer to the recording industry. As the "Queen of Soul" her accomplishments span many decades and several different musical scenes.  She is truly an American icon and national treasure.  In addition, Ms. Franklin has used her talent to support many humanitarian causes over the course of her career…"

Professor and Librarian O. D. Alexander, who after observing the play performance of "Aretha" stated the following:

"My Aretha" by David Louis Whitehead, was the most impressive activity that was brought to Southeastern University not only for student and community entertainment but also to facilitate order to the cultural contributions to the Queen of Soul. This work exhibited the life of Aretha in three stages---First in the early years, then the searching, and finally the Aretha that we all know–the musician not just the singer. Presenting such an outstanding biographical work on Aretha Franklin and her great music was probably an arduous task for the playwright. It was difficult because no only did he write an exceptional script, but he also had to audition numerous singers and actors and actresses to portray the characters used.  All of the performers were dynamic musicians and the musical support ensemble were equivalent to anything group that one would see and hear on Broadway."

Adding to the excitement around "Aretha" Department of State Public Affairs officer, Romana Harper, after seeing the play's performance, stated:

> "The David Whitehead Production on the life and times of Aretha Franklin was a theatrical delight... It would have made Aretha proud...the historical context gave depth to this biographical account of Lady Soul...I really enjoyed the musical renditions of Aretha's best, and was most entertained by this incredible group of budding entertainments...Kudos!"

The Honorable Congressman John Conyers, a ranking member on the US House of Representatives Judiciary Committee and past chair, offered his statements on "Aretha," labeling my client as an extremely dedicated and talented artist. The Honorable Congressman John Lewis was also supportive of "Aretha."  In addition, the projects "The Big Bad Wolf - The Mike Tyson Story" and "Michael Jackson and the Ghost of Ben", in their format as stage plays, were both mentioned in the Washington Post.   The "Michael Jackson" play was critically reviewed.   The Washington city newspaper declared that the play gives a dramatic take on the life of the Michael Jackson.

Simply put, there is no reason to believe that David's other projects will not meet with similar success.  David's projects, being afro-centered, should obtain and hold a large piece of the market for black viewers.  We believe that market is a growing and sustainable field that will also attract a substantial viewing from white viewers as well as other ethnic groups as well.

I am submitting a list of works for your review in the form of a numerical listing attached to this letter. David has listed his view of the best directors and artists where listed, in his view of the project's completion. Once you have had a chance to peruse this listing, we would appreciate an opportunity to discuss with you a potential association for production of these projects under the Netflix umbrella. Upon request, a manuscript or written representation can be provided for any of the projects. All listed are the property of David Whitehead and are either copyrighted, registered with the Screen Writers' Guild West, or protected under trade secret and intellectual property laws of various states. The projects are listed on the attachment.

We appreciate you taking the time to read this letter, and review the submission. We look forward to hearing from you soon.

With kindest regards, I am

Yours very truly,

S/ *W. Alan Pesnell*
W. Alan Pesnell

WAP/jl

cc:   Mr. David Whitehead

EX 6

## 30   Film Projects on Multi-Deal involving   the copyright writings of David Louis Whitehead:

1.   **"Erykah Badu in Paris with Momma Voodoo,"**

**Synopsis:**  Erykah Badu in Paris with Momma Voodoo is about a dream in which Erykah has, involving the characters Momma Voodoo and an African King. The setting is in the Paris, France, the U.S. and Africa.   Momma Voodoo is being pursued by the African King, at one of Erykah Badu's concerts being held in a Paris restaurant.  Somehow, the two characters of Momma Voodoo and the African King enter the Paris concert of Erykah Badu.   They land on stage, and interplay with Erykah. The sub-plot is where the African King is attempting to have sexual relations with Momma Voodoo, the witch doctor, to cure himself of the curse of being overly sexed.  The sub-plot drama, gains the attention of Erykah Badu, who is performing, when both Momma Voodoo and the African King enter on stage, during her concert in the Paris restaurant.   Ms. Badu becomes deeply involved with the plot, which is part to her delusional dream.   Overall: "Erykah Badu...." Is another in a series of vignettes that feature popular tunes performed at various stages in the magnificent career of the Queen of Hip Hop and the Afro Centric Diasapora", Ms. Erykah Badu.   The work illustrates important events in the life of Erykah Badu, mainly her music.   Erykah's Paris concert is repeatedly disrupted by the character Momma Voodoo, who is pursued by an eccentric African Monarch, who refuses to leave her alone.   The musical captures the total concept and feel of Erykah Badu singing her R&B, greatest hits, as she attempts to resolve the potential romantic dispute between Momma Voodoo and her companion- The African King, as he attempts to romance her, to cure his disease, overly sexed. Director of interest: A. Malik Abbott; © 2016; (Actresses of Interest: Erykah Badu, Dennis Haysbert, Rihanna, Vivica Fox).

2.   **"How Rebecca Zinani Madison Got Her Freak Off,"** (Trilogy or possibly a 4-part motion picture comedy "Rebecca in Africa").   Rihanna is awaiting financial offer to star as Rebecca. (Director of interest is Jeffrey Byrd); © 2016.

**Synopsis**:  The work depicts the main character Rebecca as an accomplished and successful African American woman.   She is a Harvard Law Graduate, who was in the top 5% of her class. She is beautiful, stylish, happily single, and a very successful Wall Street lawyer.   She is

1

exceptional; and therefore, it will take a rare and exceptional man to qualify as her mate. And, while the male dominated world in which she as ascended would like to think of her as just another pretty face, she enjoys beating them over and over again at her own game—both on and off the field. Rebecca is the modern day feminist and role model for all women who want to do, be, and have more.  "A modern Day feminist as heroin in the novel Woman v. Man.  A woman against the world succeeding against the barriers, stereotypes, and obstacles which seek to say, "No".  This work is the selling of sex as comedy.  Sexual exploits made comedic based upon the vulnerability and narrow-mindedness of men towards women.  Sex made comedic when some men are seeking to womanize when confronted by a beautiful, successful and accomplished intelligent female lawyer/woman.  Never get on Rebecca's hit-list, you might not recover after she get her freak off."

3.  **Aretha (The Life of Aretha Franklin and Rev. C. L. Franklin)**

> **Synopsis:** The screenplays "Aretha" and "Aretha 2" are based on the musical play "My Aretha" the life of Aretha Franklin and Rev. C. L. Franklin.  The story for the film production depicts the life and times of one of America's finest artist, singer and performer, Aretha Franklin and her legendary father, the late Rev. C. L. Franklin.  This work exhibited the life of Aretha in three stages---First in the early years, then the searching for her father, the Great Rev. C. L. Franklin, who was part of the Negro Civil Rights Movement, led by Rev. Dr. Martin Luther King, and finally, Aretha, that we all know –the musician not just the singer.  In short, Aretha gives the historical context  in depth to the biographical account of Lady Soul—The Queen, Ms. Franklin.  Director of Interest: Bill Duke, signed Letter of Intent. (Actresses of Interest: Jenifer Hudson, Fantasia, Jill Scott and Zendaya Coleman) (Actor of Interest: Dennis Haysbert).

> Aretha 2 will have a different cast, different music and Director of interest: Melvin Van Peebles and Mario Van Peebles.

4.  **Michael Jackson and The Ghost of Ben** for film Animation and musical stage:

**Synopsis:** Michael Jackson tells his life story to his pet rat friend named Ben.   Ben dies and MJ talks to The Ghost of Ben.   Director of Interest: Julie Dash.

5.  **The Fight (Musical Stage and Film (animation)) Michael Jackson versus Prince**

**Synopsis:**   Michael Jackson and Prince battle it out musically and by words. Director of Interest: Dwain Smith   Ya'Ke Smith.

6. **Sherman General Sherman,"** received an outstanding review of the script   by Ford's Theatre in Washington, D.C.   Director of Interest: Mario Van Peebles     (c) 2013-14;

**Synopsis:** Sherman General Sherman is about the Civil War.   Sherman General Sherman tells the story of his leadership, leading the Yankees to victory over the Confederates.   In this musical screenplay and score, the Northern Army, led by General Sherman marches from Atlanta to Savannah, Georgia, destroying the Confederate Army in the state of Georgia. General Sherman, then, continues to lead his rout of the Confederacy, by marching his men from Georgia, up the Carolina coast to Virginia, where, the Confederate Army, under the direction of General Robert E. Lee, is flanked by both General Grant and Sherman's men, and other Northern units.   General Lee surrenders, and later, Lincoln is assassinated.   The story ends.   The screenplay also has a fascinating tale, describing the relations of General Sherman's with the black/African slaves.   Sherman gives them land ownership, although he, like Lincoln, did not care about them. Yet, to save the Union, Sherman fought to preserve the U.S. Constitution and the republic.   The work has the great singer and composer Lizz Wright's soundtrack supporting and expressing the storyline's action, historical developments and sequences of interrelated events.

7. **Dr. Condoleezza Rice**. Biopic.

**Synopsis:**   First African American Female National Security Advisor and First African American Secretary of State, smooth the way for President Ronald Reagan and President George H.W. Bush to deal with Soviet Leader Makhail Gorbachev noting that Sanaa Lathan's agent has script.   (Director of Interest: Jeffrey Byrd ). (Actress of Interest: Sanaa Latham)

3

8. **A Night With Anita Baker.**    Musical Film for Cable Television.

**Synopsis:**  Radio DJ Jazz describes the life of Anita Baker and her music.   Director of Interest: Malik Abbott or Dwain Smith (Ya'Ke Smith).   (Actress of Interest: Kim Fields and singer Lizz Wright).

9.   **The Rise Fall & Rise of A Mayor—The Life of Marion S. Barry.**

**Synopsis:** Is about the Former D.C. Mayor.   The script demonstrates Barry as the man, and the unique politician who defeated the odds by gaining power, from Mississippi to Tennessee to Washington, DC as Mayor for life.   His trials and tribulations are highlighted including his civil rights grass roots activity. Director of Interest: Bill Duke.   Mr. Duke signed a letter of intent to direct this film project. (Actor of Interest: Delroy Lindo, Vivica Fox as Rasheeda Moore)

10.  **Batman Blackman...**

**Synopsis:** proposed as a Warner Bros special using an all black cast in the Batman series. Music by Michael Jackson "Invincible" LP/CD.   (Director of Interest: A. Malik Abbott). (Actor of Interest: Wesley Snipes and others).

11.  **The Reginald Lewis Story: Why Should White Men Have All The Fun** (6 to 7 part potential cable television films on the high powered executive of Beatrice TLC, who died in 1993), noting that Harvard University's Law Center is named after Mr. Lewis.

**Synopsis:** Reginald Lewis was an icon relating to finance and international business born in Baltimore, Maryland.   He was determine to succeed in any endeavor... Director of Interest: Bill Duke.   Actor of Interest: Dennis Haysbert.

12. **"Louisiana River Business Woman:   The Barbara Ann Miller Story"** entails Ms. Barbara Ann Miller, an overweight black female, who beats the odds coming from the country and streets, and racism in the south, by raising her children as a beautician and becoming a successful business woman.   Director of Interest: Mario Van Peebles.   Actress of Interest: Gabourey "Gabby" Sidibe as Barbara Ann Miller or MONIQUE Angela Hicks.

13.  **Fly-Girl.   The Bessie Coleman Story.**

**Synopsis:**  Bessie Coleman became the first African American woman aviator, who died after her plane crashed…   Director of Interest: Julie Dash.   Actor of Interest: Saana Latham.

14.  **The Malcolm X Project.**   A one man show for cable television.

Synopsis: A more serious take of Malcolm X's Political and Social Philosophy relating to black life in America during the 1960s.  Director of Interest: David Parks (son of Gordon Parks of Shaft and Super Fly) or Julie Dash.    Actor of Interest: Dennis Haysbert or Samuel L. Jackson.

15.  **Marilyn Dances –Happy Birthday, Mr. President (The Life of Marilyn Monroe)** for stage and film.   (Director of Interest: Julie Dash.   Actress of interest: Brittany Spears and Halle Berry.

**Synopsis:** Ms. Marilyn Monroe revisit her times with President John F. Kennedy and Attorney General Robert Kennedy, Elizabeth Taylor, and Richard Burton.

16. **Phyllis Hyman Sophisticated.**

**Synopsis:** The film project examines the psychology, music and life of Singer Phyllis Hyman who was troubled by love and competition…although the world loved her… (Actresses of Interest: Catherine Marie or Alicia Keys as Phyllis Hyman;   MONIQUE Angela Hicks as her

assistant who attempts to provide encouragement during Ms. Hyman's life struggles).   Director of Interest: Dwain Smith (Ya'Ke Smith).


17.   **The Black Widow**… (Director of Interest Julie Dash).

Synopsis: This work examines the life of Jacqueline Bouvier Kennedy Onassis relating to her attachment to President John F. Kennedy and Ari Onassis…


18.   **Let Them Come To Berlin**.      Director of Interest: Mario Van Peebles.

Synopsis:   President John F. Kennedy makes his case for Democracy and Freedom to Europe while giving his speech in Berlin, Germany.


19.   **Frederick Douglass.**     Director of Interest: Jeffrey Byrd.

**Synopsis:**   (4 part film based on copyrighted scripts on the   "Narratives of Frederick Douglass").


20.   **Miles Davis Narration and Tunes**.   Director of Interest:   A. Malik Abbott.

**Synopsis:** A five part film series based on the life of Miles Davis.


21.   **Roberta Flack**     Director of Interest Dwain Smith (Ya'Ke Smith).

Synopsis:   The work  examines  Roberta  Flack  and  her  music  reflecting  back  to  Donnie Hathaway in a time capsule.   (Cameo appearance of his daughter Lalah Hathaway singing as her father).

22. **The Big Bad Wolf vs. Ms. Little Red Riding Hood—The Mike Tyson Story.** Director of Interest: Julie Dash.

**Synopsis:** How Ms. Little Red Riding Hood brought down the Heavyweight Champion Mike Tyson, and how the system of justice and life seems unfair…

23. **God versus Satan.** Director of Interest: Julie Dash.

**Synopsis:** 10 part film series as Satan travels throughout the Holy Bible causing trouble attempting to defeat God.

24. **Ray Charles.** Director of Interest: A. Malik Abbott.

**Synopsis:** Ray Charles plays the piano with his band and singers telling his story. (Actor of interest Brian McKnight)

25. **Mahalia Jackson.** Director of Interest: Dwain Smith (Ya'Ke Smith).

Synopsis: Several (3) women sing and act as Mahalia Jackson for Cable television special as a Documentary. Actress of Interest as narrator Victoria Rowell.

26. **Mahalia Jackson A Child of God.** Director of Interest: Jeffrey Byrd.

**Synopsis:** Actors interplay while Mahalia sings.

Actors of Interest: Denis Haysbert and Kevin Hart.

27. **Seven Dips in a Dirty Pond.** Director of Interest: Bill Duke.

**Synopsis:** Biblical Story of the Great Army General who finally believed in God.

28.  **Dr. Martin Luther King, Jr and the music of Earth Wind and Fire.**   Director of Interest: Dwain Smith (Ya'Ke Smith).

Synopsis: Dr. King reads   passages from his works and the music of Earth Wind and Fire is used in the plot of the story.

29.  **Otis Redding Sing for Me.**   Director of Interest: A. Malik Abbott.

**Synopsis:** Woman determined that Otis Redding was born to be her man.

30.  **JFK and RFK Versus LBJ.**   Director of Interest: Julie Dash

Synopsis: The fight for political power between The Kennedys and Lyndon Baines Johnson.

**\*\*\*   These ideas and expressions of ideas cannot be used without the authors consent. The ideas and contents contained in the above listed projects, together with all written documentation associated therewith are the sole property of David Whitehead, and constitute trade secrets, intellectual property, copyrighted works and works registered with the Screenwriters' Guild of America West, as documented, and are protected by the laws of the United States of America and the various states as may be applicable.   These ideas are submitted in strict confidence.**

**David L. Whitehead**

**© 2016 dlw.**

8

[EX 7]

On Tuesday, December 22, 2020, 12:52:22 PM CST, Reid, Meg R
<mrreid@travelers.com> wrote:


Hi, David –


By way of follow up on our call today, here is my position:


1.  The motion to dismiss and all unpublished decisions were mailed on the date filed;
2.  Travelers will consent to a 30 day extension of time to respond to the motion to dismiss;
3.  Travelers takes no position on the withdrawal of the antitrust claims;
4.  Travelers consents to amendment of the caption to name the correct entity – Travelers Indemnity Company;
5.  Travelers does not consent to the Third Amended Complaint; and
6.  I do not accept service for any of the defendants.


Thanks, Meg


Meg R. Reid | Senior Counsel

Keane & Associates

Hartford, CT

Main: 917-778-6680

Direct: 860-954-9452

Mobile: 860-810-2740

Fax: 844-571-3789

Please address all correspondence sent by mail to:

P. O. Box 2996, Hartford, CT 06104-2996


Physical Address:

485 Lexington Avenue, 6th Floor

New York, NY 10017


Not a Partnership or Professional Corporation

All attorneys are Employees of The Travelers Indemnity Company

And its Property Casualty Affiliates

January 26, 2022


Clerk

US District Court for Southern District of New York

Civil Division

500 Pearl  St.

Federal Building

New York, New York 10007


Re: Documents for filing with the Court


Dear Clerk:


I am submitting several documents to be filed as follows:

1. Complaint.
2. 9 B RICO Statement.
3. Motion for An Extension of Time to Pay filing fees


Thank you,

David L. Whitehead

1906 Scott St.

Bossier, Louisiana 71111

318-820-5029

daouddavidlouis@yahoo.com



DLW
1906 scott St
Bossier, LA 71111

RECEIVED
JAN 31 2022
CLERK'S OFFICE
S.D.N.Y.

Attn:
Civil
Div.
Pro se

Clerk
USDC Southern
District New York
500 Pearl St
Federal Building
New York, New York
10007

Pro Se
TK

CERTIFIED MAIL

7020 0640 0001 9452 8378

U.S. POSTAGE PAID
BOSSIER CITY, LA
AMOUNT
$6.71
R2304108292-04
10007
1000

RECEIVED
SDNY PRO SE OFFICE
2022 FEB -1 AM 10:17